FUELS TAX — REFUND
Gross receipts derived from motor fuels supplied by a motor vehicle leasing company to its lessees under terms of a full-service maintenance lease are exempt from the two percent (2%) sales tax levied at 68 O.S. 1304 [68-1304] (1969), by virtue of the specific exemption at 68 O.S. 1305 [68-1305](j) (1969); providing, the motor or special fuels tax has been paid to the State of Oklahoma. An adjustment for erroneously paid sales taxes is made out of the funds in the official depository clearing account of the Tax Commission derived from collections in said fund from the same source from which the overpayment occurred, or where the taxpayer is required to remit taxes to the Tax Commission on a monthly or quarterly basis, a credit in lieu of the refund of the tax erroneously paid can be made to the account of the taxpayer for such amount. The Attorney General has under consideration your recent letter of March 2, 1970, wherein you state and inquire, in effect, as follows: (1) Is a motor vehicle leasing company that provides motor fuel or gasoline to its lessees under full-service maintenance leases subject to a two percent (2%) sales tax levied by 68 O.S. 1301 [68-1301] — 68 O.S. 1322 [68-1322], inclusive, on gross receipts from motor fuel or gasoline on which the motor fuel or special fuels tax has been paid to the State of Oklahoma? (2) If a motor vehicle leasing company is exempted from the two percent (2%) sales tax levy on gross receipts from motor fuel transactions with its lessees, where applicable fuel taxes have been paid and the company has erroneously paid sales taxes on those receipts, should it then be entitled to an adjustment on fuel taxes already paid to the State of Oklahoma? We understand a full-service maintenance lease to be a lease that includes a service and maintenance agreement within its terms. Thus, the lessee not only bargains for and receives a motor vehicle, but also such items as fuel, oil, lubricants, insurance, state license plates, repair parts and labor, etc., in conjunction with his use of the vehicle. In response to your first question, we refer you to pertinent sections of the Sales Tax Code, cited supra. Statutory definitions are provided at Section 68 O.S. 1302 [68-1302], in part, as follows: "(c) The term 'sale' is hereby declared to mean the transfer of either title or possession of tangible personal property for a valuable consideration, regardless of the manner, method, instrumentality or device by which such transfer is accomplished. . . . "(d) The term 'gross receipts' or 'gross proceeds' means the total amount of consideration for the sale of tangible personal property . . . without deduction therefrom on account of the cost of the property sold, labor service performed, interest paid, losses, or any expenses whatsoever . . . ." (Emphasis added) The sales tax is levied at Section 68 O.S. 1304 [68-1304], which provides in relevant part: "There is hereby levied an excise tax of two percent (2%) upon the gross proceeds or gross receipts derived from all sales to any person of the following: "(a) Tangible personal property." The exemption applicable to motor fuel sales is found at Section 68 O.S. 1305 [68-1305], in part, as follows: "There is hereby specifically exempted from the tax levied by this Article the gross receipts or gross proceeds derived from the: . . . "(j) Sale of gasoline or motor fuel on which the Motor Fuel Tax, Gasoline Excise Tax, or Special Fuels Tax has been paid to the State of Oklahoma." (Emphasis added) The language used in the Section 1305(j) exemption, supra, is clear, unconditional, and explicit. Sales of motor fuel or gasoline on which applicable fuel taxes have been paid to the State of Oklahoma are exempted from the operation of the sales tax levy. We have seen that the term "sale" as used in the Sales Tax Code, cited supra, refers to any transfer for value of title or possession to tangible personal property, irrespective of the "manner, method, instrumentality or device by which such transfer is accomplished." Analysis of this question solely on the basis of the "gross receipts" definition, supra, will provide an opposite result than that achieved by the foregoing. With such analysis the fuel provided under the full-service maintenance lease is characterized as a non-deductible expense incident to the "sale" of a motor vehicle, rather than as a "sale" of gasoline per se. Undoubtedly, it was the intention of the Legislature that the sales tax be levied upon "gross" as opposed to "net" receipts. However, we cannot deny the Section 68 O.S. 1305 [68-1305](j) exemption, supra, to the motor vehicle leasing situation solely for such reason. For it is a fundamental rule of statutory construction that to ascertain legislative intent, all parts of the act relating to the subject should be considered together. Haines v. State, Okl. Cr., 153 P.2d 347, 351 (1954). Furthermore, in case of conflict between a specific statutory provision and a general one, the specific provision will control. Fuhr v. Oklahoma City, Okl., 153 P.2d 115 (1944); Oklahoma Natural Gas Co. v. McFarland, 143 Okl. 252, 288 P. 468 (1930); 50 Am. Jur. Statutes, 367. It is the opinion of the Attorney General that your first question must be answered in the negative. Therefore, gross receipts derived from motor fuels supplied by a motor vehicle leasing company to its lessees under terms of a full-service maintenance lease are exempt from the two percent (2%) sales tax levied at 68 O.S. 1304 [68-1304](a) (1969), by virtue of the specific exemption at 68 O.S. 1305 [68-1305](j) (1969); providing, the motor or special fuels tax has been paid to the State of Oklahoma. In response to your second question we refer you to 68 O.S. 227 [68-227] (1969), which provides in pertinent part: "(a) Any taxpayer who has paid the State of Oklahoma, through error of fact, or computation or mistake of law, any tax collected by the Tax Commission may, as hereinafter provided, be refunded the amount of such tax so erroneously paid, without interest. "(b) Any taxpayer who has so paid any such tax may . . . within one (1) year from the date of payment thereof if such payment was made through mistake of law, file with the Tax Commission a verified claim for refund of such tax erroneously paid. . . ." (Emphasis added) Title 68 O.S. 228 [68-228](a) (1969), provides in pertinent part: "(a). . . If, upon hearing, the Tax Commission finds that such tax was erroneously paid through mistake of fact, computation or law, it shall enter its written order allowing said claim for refund, which refund may be paid to the taxpayer as provided by law, or credited against taxes due or to become due by the taxpayer as the case may be. . . . "(b). . . In the event the Tax Commission allows said claim for refund, it shall pay the claimant the amount of the refund so allowed out of the funds in the official depository clearing account of the Tax Commission, derived from collections in said fund from the same source from which the overpayment occurred . . . provided, that in the case of refunds due hereunder to taxpayers who are required to remit taxes to the Tax Commission on a monthly or quarterly basis, the Commission may, in lieu of a refund of the tax erroneously paid, credit the account of the taxpayer for such amount." (Emphasis added) Therefore, it is the opinion of the Attorney General that your second question must be answered as follows: An adjustment for erroneously paid sales taxes is made out of funds in the official depository clearing account of the Tax Commission derived from collections in said fund from the same source from which the overpayment occurred, or where the taxpayer is required to remit taxes to the Tax Commission on a monthly or quarterly basis, a credit in lieu of the refund of the tax erroneously paid can be made to the account of the taxpayer for such amount. (Donald E. Herrold)